†STATE EX REL. DUBS ET AL. v. ESHER ET AL.

POWER OF FIXING THE HOLDING OF CONFERENCE MAY BE DELEGATED TO A COMMITTEE.

The constitution, or discipline, of the Evangelical Association of North America required the general conference to fix the time and place of the next general conference, and, in default of their doing so, another body was to affix it. A general conference fixed the time, but delegated to a board the duty of fixing the place. The other body, claiming that such action was void, as the delegation of legislative power, or of a trust, fixed a different place, and then two conferences were held, each claiming to be the true one. Held: Fixing the place was a ministerial or administrative act, and could be delegated to a committee, and, hence, the former act was legal.

UPSON, C. J.

This is a proceeding in *quo warranto* to determine the right of the defendants to have, use and enjoy the offices of the members of the board of publication of

. †This judgment was affirmed on the opinion of the circuit court, by the supreme court, Burket, J., not sitting, no report. 51 O. S. 599.

the Evangelical Association of North America, and of the defendants, Esher, Bowman and Horn, to exercise the offices of executive committee, president and secretary, respectively, of that board.

The petition also asks that the relators may be adjudged and declared to be the true members of said corporation and the true board of publication, and entitled to assume their duties and privileges as such in the management and control of the corporation.

The Evangelical Association of North America is a religious denomination which originated about the year 1800, and is divided into conferences, called annual conferences, of which there are twenty-five.

Rules and regulations have been adopted for the government of the church, which are known as the "discipline." This "discipline" provides for the general conference, which is composed of delegates chosen by the several annual conferences, and of certain *ex officio* members.

The general conference, under certain restrictions, has power to make rules and arrangements for the church as well as such rules and regulations as will enable the general conference to exercise the powers conferred upon it, and it is also "the supreme court of law in the church."

The board of publication consists of the bishops and other members elected by the general conference for four years.

The defendants were elected by a conference held in Indianapolis in October, 1891, and the relators were elected by a conference held at the same time, in Philadelphia.

Which, if either, of those conferences was the true general conference of the Evangelical Association of North America?

Upon the decision of this question depends the decision of this case.

This church has for several years past been divided into two factions, and the hostile feelings between these two factions appears to have been especially bitter during the year 1890 and since then, but it is not necessary to consider the cause of the division. The witnesses who have testified in this case have appeared to us to be sincere, earnest and honest men, and there is but little conflict in the testimony.

Some of these witnesses have described scenes which, it is to be hoped, do not often occur at religious meetings, and which must be remembered with shame and regret by those who took part in them. Nothing has been gained by such violent means.

The proceedings of the examining elders and of the trial conferences in relation to the several charges made against Bishops Dubs, Esher and Bowman have been submitted to us, and arguments have been made in regard to the effect which ought to be given to those proceedings.

The selection of the examining elders by the accusers, and of the members of the trial conference by the examining elders, is a system so well calculated to result in wrong and injustice, especially in times of division and controversy, that but little confidence can be had in the fairness of such trials, and in the case of these three bishops, the testimony furnishes such evidence of partiality and prejudice in the proceedings that we are glad to find that it is not necessary to determine to what extent they are binding on the church.

As I have before stated, the main question to be determined is, which, if either, of these conferences held in October, 1891, was the true general conference of the Evangelical Association.

This depends upon the proper construction of sec. 71 of the "discipline," which provides "that the time and place of the general conference shall be appointed by the bishops with the consent of the majority of the conference; and if there be no bishop present, the general conference shall do it by a majority of votes, or the oldest annual conference, who then shall give the other annual conferences due notice of the time and place."

The general conference held at Buffalo in 1887 adopted the following resolution: "Resolved, that the next session of the general conference shall begin on the first Tuesday in October, 1891." And also the following resolution: "Re-

solved, that the matter of appointing the place of the next general conference be referred to the board of publication."

The board of publication, in October, 1890, appointed Indianapolis as the place of the next general conference, and in February, 1891, the East Pennsylvania conference appointed Philadelphia as the place.

It is claimed by the relators that the place was not fixed either by the bishops, with the consent of the majority of the conference, or by the general conference, and that, therefore, the East Pennsylvania conference, as the oldest annual conference, had the right to fix it.

We are satisfied that the provision of the "discipline," in regard to appointing time and place of general conference by the oldest annual conference was not intended to confer any special privilege or right upon that annual conference, but to provide a convenient mode in which the time and place might be fixed if the bishops should fail to exercise the authority conferred upon them.

In support of the claim made by the relators, numerous decisions have been cited to show that legislative power cannot be delegated, and that trusts involving the exercise of judgment and discretion, must be executed by those to whom they have been confided. On the part of the defendants, decisions have been cited to show that ministerial and administrative powers may be delegated, and the principles contended for on both sides are well established.

It is still, however, to be determined by which of those principles this case is to be controlled, and there is no absolute rule by which that question can be settled.

After considering the words of sec. 71, and its object and purpose, with the aid of any practical construction which may have been given to that section, and similar provisions of the discipline, such a construction should, if possible, be given to its language as will most fairly carry into effect the intentions of those who adopted it. The provision was manifestly inserted in the discipline for the purpose of securing the appointment of a town or city which would be easily accessible to the members of the conference, where a suitable church or other building could be obtained in which to transact the business of the conference, and where the members would be properly entertained. While the selection of such a town or city may to some extent require the exercise of judgment and discretion, it is a judgment and discretion that may properly be entrusted to a committee or to a board elected by the general conference. In fact, it might often be found that the duty could be better performed by a committee than by the bishops at the meeting of the general conference, and that is said to have been true at the Buffalo conference, for the reason that the only invitation previously given had been withdrawn, and time was needed for the selection of another place. We are of opinion that there is nothing in the nature of the duty to be performed which would prevent the bishops and general conference from intrusting it to the board of publication.

We are next to consider how far there has been any practical construction of section 71 and similar provisions of the discipline, not for the purpose of showing that any one of the relators is estopped from resisting a violation of the law of the church, but in order to show what construction has been given to the discipline by the church through its representatives.

The general conference held at Buffalo in 1887 is admitted to have been legally organized. That conference adopted, by a unanimous vote, the resolution referring the matter of appointing the place of the next general conference to the board of publication. As shown by the records, one of the relators presided over the conference, and four of the other relators were in the conference the day the resolution was passed, yet it does not appear that the slightest objection was made to such action of the conference.

Under these circumstances, while we do not regard this action as having the force of the judicial decision, we consider it entitled to great respect as the con-

Vol. VI. CIRCUIT COURTS. 471

312 State ex rel. Dubs et al. v. Esher et al.

struction placed on this part of the discipline by the highest legislative and judi-cial body of the church at a time when no division had taken place.

Again, the East Pennsylvania conference, whose rights it is now insisted have been violated, made no such claim until in February, 1891, it named Phila-delphia as the place of the next general conference. It is said, however, that it had no occasion to appoint the place until it did so, and that is true; but when it must have been well known to all of its members that such authority had been given to the board of publication, the failure for so long a period to make any protest must be taken as some proof of acquiescence.

The same is true of the other annual conferences which now sustain the posi-tion taken by the relators.

The discipline provides that the times and places of the annual conferences shall be appointed by "the bishop, together with the majority of votes of the con-ference. But if there is no bishop present, then shall each conference itself ap-point the time and place of its sessions."

We can see no difference between these provisions and those of sec. 71, which would require a different construction in reference to the power of delega-tion, and the testimony shows that in numerous instances the times and places of annual conferences have been appointed after the adjournment of the sessions, and such appointments have been approved by the general conference.

The fact that eighteen undivided annual conferences elected delegates to the Indianapolis conference, also affords strong evidence of the general under-standing of the church as to the meaning of sec. 71. These and many other facts which have been established by the testimony, prove that so strict and narrow a construction of that section as is claimed by the relators, has not been given to it by either general or annual conferences.

From a careful consideration of the language of that section in connection with the other sections of the discipline, to which our attention has been called, and of all the testimony, we have come to the conclusion that the action of the general conference held at Buffalo was in accordance with the true meaning and intent of the discipline; that the conference held at Indianapolis in October, 1891, was the general conference of the Evangelical Association of North America, and that the defendants were legally elected members of the board of publication.

Judgment will, therefore, be rendered in favor of the defendants.